Peter ODIMA, Plaintiff–Appellee–
Cross–Appellant,

v.

WESTIN TUCSON HOTEL COMPANY,
a Delaware corporation, Defendant–
Appellant–Cross–Appellee.

Nos. 91–15942, 91–16001, 91–
16065 and 91–16112.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted August 17, 1992.

Decided April 19, 1993.

Marshall W. Anstanding and Diane M. Dear, Bryan, Cave, McPheeters & McRoberts, Phoenix, AZ, for defendant-appellant-cross-appellee.

Carol A. Summers, Richard W. McKee, Miller, Pitt & McAnally, Tucson, AZ, for plaintiff-appellee-cross-appellant.

Before: WIGGINS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this Title VII case, we are called upon to consider whether employment discrimination is proved when the district court fails to make specific findings regarding each explanation proffered by the employer for allegedly discriminatory promotion decisions.

## I

Peter Odima is a black man who was born in Nigeria. He completed his high school education in Nigeria, where classes are conducted in English, the country's official language.

In 1977, Odima emigrated to Great Britain, where he attended various colleges, taking primarily business and accounting courses. Although he did not complete any program or earn a degree, he did pass the "conversion examination" in accounting. During his time in Great Britain, Odima worked part time at a pharmaceutical company as a shipping clerk and eventually started his own business buying used cars in Britain and exporting them to Nigeria for resale.

In 1981, Odima emigrated to the United States. He enrolled in Wayne County Community College in Michigan, where he took courses in English, sociology, biology, statistics, economics, psychology, and speech, completing 24 hours of credit with a 2.6 GPA. Odima moved to Tucson in 1983, where he attended Pima Community College and completed 77 hours of credits, attaining a 2.4 GPA with classes in accounting, business law, computer programming, algebra, business writing, and macroeconomics. In the fall of 1984, Odima transferred to the University of Arizona as a finance major in the College of Business. While attending the University, Odima worked part time in the purchasing and storage department of the University.

In August 1986, Odima applied for employment at the Westin La Paloma Resort ("La Paloma"), operated by the Westin Tucson Hotel Company ("Westin"). He sought a job in the accounting area, but was told the only openings available were in the laundry, and that he could transfer to the accounting division later. Odima accepted a job in the laundry.

Shortly after he began work, Odima met with the head of the accounting division. They did not discuss any particular job, but Odima expressed his interest in accounting, and the division head encouraged Odima to apply for a transfer.

Between March 1987 and April 1988, Odima applied for transfer to six job openings at the La Paloma. In March 1987, he applied for a Night Auditor position in the accounting division. The interviewer noted on the interview form that Odima "[w]as acceptable. Would consider in the future." The job was filled by Kevin Dreke, a white male, who was transferred from the groundskeeping department. Dreke had attended a vocational-technical school for almost two years, and had taken courses in inventory control, shipping, receiving, basic accounting procedures, payroll accounting, and records management. He had completed a brief internship and had received a good letter of recommendation. Westin

contends that it selected Dreke because he was the most qualified applicant.

In July 1987, Odima applied for a job as a Staff Planner, a non-accounting position. Odima's application was late. The job was filled by Lisa Dibbern, a white female, whose qualifications, according to the district court, "w[ere] superior to Mr. Odima's." Westin contends that Odima was not qualified for this position.

In August 1987, Odima applied for a Accounts Receivable Clerk position in the accounting division. The position was filled by Deanna Searer, a white female, who was formerly a secretary in the maintenance department. Although Odima met the minimum qualifications for the position, Westin contends that Searer was the most qualified applicant.

In September 1987, Odima applied for a job as a Receiving/Shipping Clerk, an accounting position involving occasional guest contact. On Odima's interview form, the interviewer wrote: "Very good related experience and education. Good qualifications. Heavy accent. Could inhibit communication." The job was filled by Albert DeRego, a male Pacific Islander. DeRego transferred from the room service department, and had worked in the purchasing and receiving area for a summer as a "runner." Westin contends that it chose DeRego over Odima for two reasons: first, because DeRego had worked in the department previously; and second, because Odima's communication skills were insufficient.

In December 1987, Odima applied for another Accounts Receivable Clerk position. Odima's application was lost. The job was filled by Patricia Bailey, a white female, who had substantial qualifications, including a master's degree.

Finally, in April 1988, Odima applied for a job as a Promotions Coordinator, a non-accounting position. Odima was not granted an interview because Westin concluded that he did not meet the minimum requirements of the position. The district court agreed with this assessment.

After being turned down for the second accounts receivable job, Odima met with Dahle, the head of the accounting division, and Moffatt, the head of human resources. Dahle told Odima that Odima's accent was a hinderance to transfer either to the accounts receivable or purchasing and receiving areas. On December 31, 1987, Odima filed a complaint with the Equal Employment Opportunity Commission of the Arizona Civil Rights Division.

In January 1988, Westin offered to pay for speech therapy classes for Odima. Odima declined the offer. Later, Westin agreed to a no-fault settlement of the Arizona Civil Rights Commission proceedings in which it would offer to Odima the next available Night Auditor position. In exchange, Odima would have to relinquish any claims of discrimination against Westin. Odima declined the offer.

On December 1, 1988, Odima walked off the job in the laundry and never returned. The immediate reason for the walkout was Odima's belief that Westin had cheated him on his paycheck.

Odima filed suit, claiming that Westin, in rejecting his transfer applications, had discriminated against him on the basis of race and nationality in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and Arizona law. Odima also alleged wrongful discharge and intentional infliction of emotional distress.

After a two-and-a-half day bench trial, the district court entered judgment against Odima on the wrongful discharge and the intentional infliction of emotional distress charges, and in favor of Odima on his discrimination claims under Title VII, section 1981 and state law. The court ordered that Odima be employed by Westin "at the entry level of Purchasing and Receiving as soon as a position in that department or division is open," and that he was to receive front pay until he was placed in such position. The court ordered back pay to Odima from September 25, 1987, when he was denied the Purchasing and Receiving position. Under 42 U.S.C. § 1981, the court awarded Odima $10,000 in compensatory damages. The court also awarded attorneys' fees to Odima's counsel.

Westin appeals the finding of discrimination, the calculation of damages and back pay, and the amount of attorneys' fees. Odima cross-appeals the calculation of back pay.

## II

■ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–1 to 2000e–17, provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In a "disparate treatment" case such as this, the ultimate issue for the district court to decide is "whether 'the defendant intentionally discriminated against the plaintiff.'" *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

■ In *Burdine,* and in the earlier case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth an analytic framework for district courts "to bring the litigants and the court expeditiously and fairly to this ultimate question." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Once the employer has produced evidence of a legitimate, non-discriminatory reason for its decision, the burden on the employee to demonstrate that the proffered reason was pretextual "merges with the ultimate burden of persuading the court that [the employee] has been the victim of intentional discrimination." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The employee "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

Here, the district court found that Odima made out prima facie cases of discrimination for the Night Auditor position, the two Accounts Receivable positions, and the Purchasing and Shipping position. Odima could not establish prima facie cases for the Staff Planner and the Promotions Coordinator positions since he was not qualified for them. Westin's proffered reasons for not choosing Odima for the positions for which he made out a prima facie case are varied, but it essentially contends that a more qualified applicant was chosen for each. Since Westin met the burden of production in coming forward with legitimate non-discriminatory reasons for not selecting Odima, the district court's finding of discrimination rested on its analysis of pretext.

We conclude that the district court erred as a matter of law in its pretext analysis (1) by not making specific findings with regard to each position and by not considering each explanation proffered by Westin separately, and (2) by improperly drawing an inference of discrimination from a finding that the successful applicants were not "clearly superior" to Odima. We discuss these conclusions in turn below.

## A

In analyzing whether the reasons offered by Westin were pretextual, the district court did not consider the specific reasons offered by Westin for each decision. Rath-

er, the district court found that one of the reasons offered by Westin was false, and concluded on that basis alone that the others must have been false as well, and thus pretextual. Specifically, the district court found that "the alleged speech impediment is a pretext and it clouds and renders suspect the other reasons advanced by Westin for its job determinations."

Such conclusion is improper under Title VII. The district court must consider an employee's claim of discrimination "with regard to each of the[ ] employment decisions separately, examining the specific rationale offered for each decision, and determining whether that explanation supported the inference of pretext." *Norris v. City and County of San Francisco*, 900 F.2d 1326, 1330 (9th Cir.1990). The district court is required to make specific findings of fact with regard to each proffered explanation. *Logue v. International Rehabilitation Assocs.*, 837 F.2d 150, 153 (3d Cir. 1988). Where, as here, "an employer articulates several alternative and independent legitimate nondiscriminatory reasons, the falsity of one does not necessarily justify the finding that the remaining articulated reasons were pretextual." *Id.* at 155; *accord Sims v. Cleland*, 813 F.2d 790, 793 (6th Cir.1987); *see also Clemente v. United States*, 766 F.2d 1358, 1366 (9th Cir.1985). "It must be recognized that it is not merely the falsity or incorrectness of the articulated reason that gives rise to the conclusion of pretext. Rather, it is the resulting absence of legitimate explanation for the suspect employment decision that warrants the finding of discrimination." *Sims*, 813 F.2d at 793. Because a finding that *one* of Westin's proffered reasons was pretextual does not in itself support the district court's ultimate conclusion that Westin had discriminated against Odima, we vacate the judgment and remand for further findings.

In reaching this result, we do not conclude that the district court's finding regarding Odima's ability to communicate was clearly erroneous. The court found, based on its first-hand experience with Odima, that he had full comprehension of English spoken to him, and that he could speak English "adequate to conduct himself in a business or social setting." We cannot second-guess these first-hand observations by the district court. *See Fragante v. City and County of Honolulu*, 888 F.2d 591, 598 (9th Cir.1989) (giving weight to the district court's finding, based on first-hand observation, that Fragante had a "difficult manner of pronunciation"), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990). As in the assessment of credibility, the district court is particularly well-situated to evaluate a litigant's communication skills, especially a litigant who testified on his own behalf. The district court's findings are supported by an examination of the record, which reveals that Odima was asked for clarification on only a few occasions over the course of his testimony, even during highly stressful cross-examination. Moreover, we cannot assail the district court's finding that because the reason was unworthy of credence, it was pretextual, *see Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096, although we caution that such a conclusion does not automatically follow as a matter of course. Nevertheless, we emphasize that the falsity of one rationale sheds little light on the truthfulness of the others.

Neither party contends that Westin relied on Odima's communicative ability in rejecting him for the Night Auditor or the Accounts Receivable positions. Rather, Westin articulated separate and independent reasons for preferring other candidates. Westin contends that it hired Dreke for the Night Auditor position because his education at vocational technical school was more closely tailored to the job than was Odima's. It contends that it preferred Searer for the first Accounts Receivable position because she had extensive experience in related fields. Finally, it contends that it did not hire Odima for the second Accounts Receivable position because it lost his application. In any event, Westin argues that it would not have hired Odima because the successful candidate had much more impressive credentials, including a master's degree. The fact that Westin proffered a false reason for rejecting Odima for a later job has little relevance to the

evaluation of the sincerity of these explanations. On remand, any determination of discrimination by the district court must be based upon specific findings that those proffered reasons were pretextual.[1]

Furthermore, even the *unlawful* consideration of accent does not necessarily render other reasons suspect. Once we accept the district court's finding that Odima's accent did not interfere with his ability to communicate, we must conclude that consideration of accent in the decision with regard to the Shipping and Receiving position was illegitimate and discriminatory. In *Fragante*, 888 F.2d at 596, we concluded that "[a]n adverse employment decision may be predicated upon an individual's accent when—but only when—it interferes materially with job performance." *See also Carino v. University of Oklahoma Board of Regents*, 750 F.2d 815, 819 (10th Cir.1984); *Berke v. Ohio Dep't of Public Welfare*, 628 F.2d 980, 981 (6th Cir.1980) (per curiam). We reached this conclusion because

> [a]ccent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem but the candidate's inability to measure up to the communications skills demanded by the job.

*Fragante*, 888 F.2d at 596. However, although Westin indicated that Odima's accent was a component in its decision not to hire him for the Purchasing and Receiving position, Westin also offered an explanation that, if true, constitutes a legitimate, non-discriminatory reason for hiring DeRego instead of Odima. Westin claims that it hired DeRego because he had previously worked for the Shipping and Receiving department. The court may not disregard this reason simply because another reason is illegitimate. In a mixed motive case, consideration of a discriminatory factor does not automatically result in a Title VII violation. Rather, where an employee has demonstrated that an illegitimate criterion has played a substantial role in an adverse employment decision against him, the burden of persuasion shifts to the employer to prove by the preponderance of the evidence that it would have made the same decision without consideration of the illegitimate factor.[2] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 259–60, 269, 109 S.Ct. 1775, 1795, 1800, 104 L.Ed.2d 268 (1989) (White, J., concurring and O'Connor, J., concurring in plurality opinion). By reaching the conclusion that a violation of Title VII occurred without having made a specific finding that Westin would not have chosen DeRego had it not considered Odima's accent, the district court circumvented the scheme mandated by *Price Waterhouse*.

## B

The district court also erred in concluding that a finding of discrimination was supported by the fact that Westin passed over Odima in favor of applicants with qualifications that were not "clearly superior" to Odima's. The district court's reasoning would require "the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981). That result was expressly—and unanimously—rejected by the Supreme Court in *Burdine*. The Court explained that "Title VII does not demand that an employer give preferential treatment to minorities or women."

---

1. We note that it is unlikely that such a finding with regard to either Accounts Receivable position would be upheld under the clear error standard upon review if it were based only upon a comparison of the qualifications of Odima and Searer or Bailey. As the district court found, Searer had a substantial background in the kind of work an Accounts Receivable clerk would do, and Bailey's educational background was substantial.

2. This standard was altered by the Civil Rights Act of 1991. However, Odima does not argue that the Act should apply to his disparate treatment claim, and thus we do not consider its applicability here.

*Id.* Rather, the focus of Title VII is to ensure *neutral* employment and personnel decisions. Thus, "the employer has the discretion to choose among equally quali·fied candidates, provided that the decision is not based upon unlawful criteria." *Id.* Moreover, "the fact that a court may think that an employer misjudged the qualifications of the applicant does not in itself expose [the employer] to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." *Id.*

Thus, on remand, the district court must compare the qualifications of Odima and the successful candidates, but only to ferret out discriminatory motives. The district court must not substitute its own judgment about whether the employment decisions were wise, or even fair, for that of the employer. The closer the qualifications of the candidates, the less weight the court should give to perceived differences in qualifications in deciding whether the proffered explanations were pretextual.

The court is, of course, not limited to consideration of the candidates' qualifications in determining whether discriminatory intent motivated the decision. The court may consider, for example, direct evidence that minorities were regularly treated differently than non-minorities. However, the district court's conclusions must be based on factual findings grounded in the record, and not on vague, impressionistic notions that Westin must have discriminated against Odima because he is deserving of a better job. We thus reverse the district court's decision on Odima's Title VII claim and remand for further findings.

### III

The district court's decision with regard to Odima's section 1981 claim was based upon findings of discrimination that, as set forth above, were inadequate. Thus, we also reverse and remand for further proceedings in Odima's section 1981 claim.

### IV

Because we vacate the judgment and remand for further findings, we need not consider Westin's arguments that the district court abused its discretion in fashioning remedies and in calculating attorneys' fees.

REVERSED and REMANDED.

FERNANDEZ, Circuit Judge, concurring:

I agree that the district court's "impression" that there was discrimination does not serve as a sufficient finding of discrimination. Jurors can act upon impressions—collectively, they *are* the sense of the community and that sense, for good or ill, is often impressionistic. Not so with judges; they must "find the facts specially." Fed. R.Civ.P. 52. That was not done here.

I write separately because I fear that consideration of the separate parts of the majority's opinion might lead some to think that it places a burden upon district judges which is heavier than the one I have just outlined. The opinion does say that specific findings are required. It also states that the finding of one pretextual reason—accent, which is often·a stand-in for race or origin—does not "necessarily" justify a finding that the other reasons are also pretextual. It goes on to state that the court must not substitute its own judgment about wise employment decisions for that of the employer. Even if candidates *are* equally qualified, the employer can choose among them in unwise ways, so long as those ways do not involve an unlawful criterion such as race. All of that is true, but it does not mean that when the district court attempts to see if the real criterion was unlawful it must blind itself to the fact that the employer has given some false reasons for its decision.

As I see it, we do not mean to say that the falsity of one reason cannot affect the court's perception of the truth of another one. For example, two reasons were given for denying Odima the Purchasing and Receiving job. The district court found one of those reasons—speech problems—to be false, and we agree that the court did not clearly err in so doing. The other reason was that the person selected had previously

worked for Purchasing and Receiving. He had. Is that enough to defeat Odima's case? I think not. The other person's work was, it seems, a part-time job of making deliveries during a single summer season. That sounds like a fairly frail selection criterion to me. It is particularly so if Odima's other qualifications were higher. Given the bad luck Odima had in previous attempts to transfer and given the falsity of one of the reasons for denying him the job, the court could look upon the new reason with a jaundiced eye. No doubt it did. If based on the evidence, including the comparison of qualifications, the falsity of one reason, and the weakness of the other, the district court is led to a determination that the other reason is also false, the district court need only say so. But it must say so. Therefore, I concur.