**Harold WILBORN, Plaintiff,**

v.

**John ASHCROFT, in his official capacity, as Attorney General United States of America Department of Justice, Defendant.**

**No. 99–CV–2617IEGAJB.**

United States District Court,
S.D. California.

Aug. 5, 2002.

Harold L. Wilborn, El Cajon, CA, Pro se.

U.S. Attorney CV, U.S. Attorney's Office Southern District of California Civil Division, San Diego, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GONZALEZ, District Judge.

Presently before the Court is defendant's motion for summary judgment.

### BACKGROUND

Harold Wilborn ("plaintiff") is an African–American male employed as a Supervisory Law Enforcement Communications Assistant ("SLECA") with the San Diego Sector of the United States Border Patrol, Immigration and Naturalization Service ("INS"). He receives compensation for a service connected disability for which he was honorably discharged from the Navy. Plaintiff began working for the Border Patrol in 1986 as a probationary electronics technician. The Border Patrol terminated plaintiff on June 5, 1987 for unsatisfactory performance. (Df.ex. A2, A12). The Border Patrol then hired plaintiff as a Law Enforcement Communications Assistant ("LECA") in late 1987.

In November, 1997, plaintiff applied for a promotion to Communications Sector Department Head, SLECA, GS–1802–9 (the GS–9 position). On January 20, 1998, the INS informed plaintiff that another applicant, Gordon Markham, had been selected. Markham's selection, however, opened up a vacancy for Shift Supervisor, SLECA, GS–1802–8 (the "GS–8" position). Plaintiff applied for a promotion to this position in January, 1998. Two other applicants— William Kendrick and Darlene Evans— also applied for the GS–8 opening. An interviewing panel composed of Gordon Markham, Jesus Martinez, and Warren Hulst interviewed applicants for the position at some time in early 1998. The interviewing panel unanimously recommended William Kendrick for the promotion. (Markham decl. ¶ 5; Hulst decl.

¶ 5). On February 18, 1998 plaintiff learned that defendant had selected Kendrick. (TAC, ¶ 21). Plaintiff claims that defendant wrongfully denied him both promotions. Specifically, plaintiff claims he was discriminated against on the basis of his race, disability, and veteran status.

Initially, plaintiff sought relief by filing a complaint with the Office of Special Counsel ("OSC"). (TAC ¶ 15). Plaintiff then appealed the non-selections for the two positions to the Merit Systems Protection Board ("MSPB" or "Board") on November 20, 1998. (*Id.* ¶ 18–19). The Administrative Law Judge issued an initial decision concluding that the Board lacked jurisdiction over any of plaintiff's claims. On June 16, 1999, the full Board denied plaintiff's petition for review and notified plaintiff of his right to appeal to the United States Court of Appeals for the Federal Circuit. Plaintiff appealed to the Federal Circuit, the Equal Employment Opportunity Commission ("EEOC"), and the United States District Court for the District of Columbia. The District of Columbia Court subsequently transferred plaintiff's complaint to this Court. On August 26, 1999, the EEOC denied plaintiff's request for review of the Board's decision on the grounds that plaintiff had filed an appeal with the Federal Circuit. (TAC ¶ 21). On February 16, 2000, the Federal Circuit upheld the Board's determination that it lacked jurisdiction over plaintiff's claims. *See Wilborn v. Department of Justice,* 2000 WL 194114 (Fed.Cir.2000).

Plaintiff's complaint alleges violations of Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, and the due process and equal protection clauses of the United States Constitution. By order dated May 14, 2001, this Court dismissed plaintiff's constitutional and USERRA claims. Plaintiff's Title VII claims are as follows: (1) defendant denied plaintiff both promotions, in part, because of his race in violation of 42 U.S.C. § 2000e–16; (2) defendant maintained a hostile work environment; (3) defendant retaliated against plaintiff for appealing his non-selections to the MSPB by failing to provide him timely notice of his right to file an EEO complaint in violation of 42 U.S.C. § 2000e–3(a). Plaintiff alleges that defendant violated the Rehabilitation Act, 29 U.S.C. § 791, by failing to reasonably accommodate his purported disability and by denying him the GS–9 promotion, in part, because of his disability.

Defendant moves for summary judgment on the following grounds: (1) plaintiff fails to establish a prima facie case of racial discrimination with respect to the GS–9 position because he was not qualified; (2) defendant proffers a legitimate, non-discriminatory reason for plaintiff's non-selection for the GS–8 position, which plaintiff fails to show is pretextual; (3) plaintiff fails to establish a prima facie case of a hostile work environment; (4) plaintiff fails to establish a prima facie case of retaliation because he can produce no evidence of an adverse employment decision or of a causal connection between his engagement in protected activities and an adverse employment action; (5) plaintiff fails to establish a prima facie case under the Rehabilitation Act because he is not disabled within the meaning of the Act and he never requested any accommodation.

## DISCUSSION

### A. Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is present when a factual determina-

tion must be made by a jury to determine the rights of the parties under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993). A dispute is only "genuine" when "the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. In deciding a motion for summary judgment, the Court must examine all the evidence in a light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material facts exists. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the nonmoving party's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). Instead, "the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule

56(c), is satisfied." *Lujan*, 497 U.S. at 885, 110 S.Ct. 3177 (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Such evidence need not be in a form admissible at trial to avoid summary judgment. *Id.* The moving party is entitled to judgment as a matter of law if the nonmovant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Id.*

**B. Title VII Claims**

■ Plaintiff alleges that he was denied both promotions, in part, on the basis of his race in violation of 42 U.S.C. § 2000e–16, which proscribes racial discrimination in federal employment. Plaintiff's claim is governed by the burden-shifting standard first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green.*[1] Under this standard, a plaintiff first must

---

1.  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668     (1973).

first establish "a prima facie case sufficient to give rise to an inference of discrimination.[2]" To establish a prima facie case, a plaintiff must show that: (1) he belongs to a racial minority; (2) he applied for and was qualified for the position that he was denied; (3) he was rejected for the position despite his qualification; and (4) the employer filled the position with a person not of plaintiff's racial group, or continued to seek applicants of similar qualifications. *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1264 (9th Cir.1997). Once the plaintiff makes a prima facie case, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's rejection. Once the defendant does so, the burden of production shifts back to the plaintiff to demonstrate that the defendant's proffered reason for the denial of promotion is pretextual. A plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In a summary judgment motion, where the plaintiff provides direct evidence that the defendant acted with discriminatory intent, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998). However, where the plaintiff offers only circumstantial evidence that tends to show the defendant's proffered motive is not reliable, such evidence "must be 'specific' and substantial' in order create a triable issue ..." *Id.* at 1222. The mere existence of a prima facie case, sufficient to create a presumption of un-

lawful discrimination, does not suffice to withstand summary judgment. That is, "[a plaintiff] must do more than establish a prima facie case and deny the credibility of the defendant's witnesses." *Schuler v. Chronicle Broadcasting Co.,* 793 F.2d 1010, 1011 (9th Cir.1986); *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 891 (9th Cir. 1994). At all times, the burden of persuasion remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 526, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 1. 1997 GS–9 Promotion

Plaintiff alleges that he was denied the promotion to Communications Sector Department Head, SLECA (GS–9), in part, on the basis of his race. Because plaintiff offers no direct evidence that discriminatory criteria motivated Defendant's decision to promote Gordon Markham over plaintiff, the Court will apply the *McDonnell Douglas* framework. *See Tarin,* 123 F.3d at 1264. After reviewing the record in the light most favorable to plaintiff, the Court concludes that plaintiff fails to establish a prima facie case of race discrimination with respect to the 1997 promotion. By plaintiff's own admission, contained in his sworn deposition, he was unqualified for the promotion to GS–9 and Mr. Markham was qualified:

> Q [T]he qualifications required on page 1 [of "Vacancy Announcement," No. MSPII–97–SDC–21] ... indicates, "All applicants must meet the following OPM Qualification Standards: 52 weeks of specialized experience equivalent to at least the next lower grade level."
>
> Did Mr. Markham, as far as you know, have that experience? As far as you know?
>
> A I believe that he did.

---

**2.** Alternatively, a plaintiff may establish a prima facie case by presenting direct evidence of

discriminatory intent. *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

Q And did you—

A I know I didn't.

Q Under "Specialized Experience," [the announcement] indicates the candidates are required to have, "Experience which is directly related to the position to be filled . . . To be creditable, specialized experience must have been equivalent to at least the next lower grade level in the normal line of progression for the occupation in this organization."

Did Mr. Markham satisfy those requirements[?].

A. I believe he did.

Q And did you?

A. No, I didn't. Or I believe I didn't. (Df. ex. D 96:1–22); *(see also* Df. ex. C1). Plaintiff, in his opposition, counters that he never conceded that he was not qualified for the GS–9 promotion. Rather, plaintiff asserts that he "has only conceded that he did not have the same experience as Mr. Markham. Where in actuality Plaintiff had more experience [sic]." (Pl. Opp., p. 12). Apparently, plaintiff is referring to his previous service as an electronics technician, a GS–9 position, from August 4, 1986 to June 5, 1987 when he contends that he was more qualified for the GS–9 position that Markham. (*Id.* at 9). The Court rejects plaintiff's argument for two reasons. First, plaintiff's assertion contradicts his sworn deposition testimony, quoted above. A party cannot create a triable issue of fact simply by contradicting, in his opposition papers, his previous sworn deposition testimony. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262 (9th Cir.1991) (citing *Foster v. Arcata Assoc.,* 772 F.2d 1453, 1462 (9th Cir.1985)).[3] Second, the vacancy announcement clearly states that one of the requirements for the GS–9 position was "52 weeks of specialized experience equivalent to at least the next

lower grade." (Df.ex. C1). Plaintiff's previous employment as an electronics technician did not last 52 weeks. (Pl.Opp., p. 12). At the time he applied for the GS–9 promotion, plaintiff was a GS–7. (Df. ex. D p. 151:18–25). Absent a showing that plaintiff was qualified for the Department Head position, plaintiff fails to establish a triable issue with respect to a necessary element of his prima facie case. Accordingly, defendant is entitled to summary judgment on this claim.

### 2. 1998 GS–8 Promotion

█ Plaintiff alleges that he was denied the 1998 promotion to Supervisory Law Enforcement Communications Assistant, GS–8, because of his race, in violation of Title VII. As with the GS–9 promotion, plaintiff offers no direct evidence that discriminatory animus motivated the 1998 promotion decision, and the Court therefore will apply the *McDonnell Douglas* analysis to plaintiff's claim. *See Tarin,* 123 F.3d at 1264. In its memorandum in support of its motion, defendant does not specifically dispute that plaintiff sets forth a prima facie case, though it does not concede this point. For purposes of this motion, the Court will assume, without deciding, that plaintiff has indeed established a prima facie case for the GS–8 position. The burden therefore shifts to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's non-selection. Defendant provides a legitimate, non-discriminatory reason for selecting Kendrick over plaintiff, namely, that (1) Kendrick possessed more supervisory experience than either of the other two candidates; and (2) that Kendrick's interview skills were superior to the other applicants'. (Markham decl., ¶ 6); (Hulst decl., ¶ 5).

---

**3.** While *Kennedy v. Allied Mutual Insurance Co.* concerned contradictory affidavits, its holding applies with equal, if not greater, force when plaintiff contradicts prior deposition testimony with unsworn assertions contained in a memorandum of opposition.

■ Because defendants set forth a legitimate, non-discriminatory reason for Kendrick's selection, the burden shifts back to plaintiff to produce evidence sufficient to allow a reasonable factfinder to conclude that the defendant's reason is not credible or that the true reason was discriminatory. *Warren,* 58 F.3d at 443. Plaintiff presents several arguments attacking defendant's proffered reason for selecting Kendrick as a pretextual "mask" for a discriminatory motive. First, plaintiff asserts that he was more qualified than Kendrick for the GS–8 position. To support this contention, plaintiff notes that in 1996, INS selected him for promotion to a SLECA, GS–8 position. At the time, plaintiff declined this promotion for personal reasons, and INS selected Robert Gregor instead. According to plaintiff, William Kendrick was also a candidate for the 1996 promotion but was not selected. Plaintiff reasons that if he was selected ahead of Kendrick in 1996, and if Kendrick was not even the "second choice" for the position, then by implication Kendrick was less qualified than plaintiff for the 1998 promotion. Plaintiff also notes that in 1994 Kendrick's supervisors discovered him drinking alcohol while at work. In his declaration, Robert Gregor explains that in 1994 he reported to his supervisors his suspicion that Kendrick was drinking on the job. Hulst, in his declaration, states that he found alcohol in Kendrick's locker. Kendrick subsequently underwent counseling with Alcoholics Anonymous and, by all accounts, remained a sober and reliable employee until his death.[4]

In his opposition, plaintiff contends that, contrary to the assertions made by Gregor, Hulst, and Markham in their sworn declarations, Kendrick's drinking problems continued after 1994. Plaintiff cites a copy of a letter submitted along with several other exhibits with his opposition in support of his argument. Even if this letter is admissible, it fails to support plaintiff's assertion that Kendrick's drinking problems continued after 1994.[5] Apart from referring to this letter, plaintiff disputes the credibility of defendant's witnesses by asserting that Hulst and Gregor are trying to "stay in the good graces of their supervisor," that Hulst is the "heir apparent," and that Gregor is a "golfing buddy" of Markham and is about to retire. These allegations, however, are unsupported any evidence, admissible or otherwise. They are also conclusory, vague, and irrelevant to the present motion. It is well established that to survive summary judgment, a plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Wallis,* 26 F.3d at 890 (quoting *Schuler v. Chronicle Broadcasting Co.,* 793 F.2d 1010, 1011 (9th Cir.1986)). ·

Plaintiff's arguments regarding Kendrick's qualifications for the GS–8 position also fail to establish a triable issue of fact regarding pretext. Plaintiff argues that because, in his view, he was more qualified for the GS–8 position than Kendrick, Kendrick's selection raises a triable issue regarding the credibility of defendant's proffered reason for its decision. Generally, "[f]acts tending to show that the chosen

---

4. Markham, Hulst, and Gregor, in their sworn declarations, all state that, to the best of their knowledge, Kendrick's drinking problems ended after the 1994 incident. Since Kendrick is deceased, he cannot, of course, refute plaintiff's assertions.

5. The letter is dated September 7, 1994. On its surface, it appears to be a letter written by Robert Gregor to his superiors, reporting his suspicion that Kendrick was drinking on the job. This is perfectly consistent with Gregor's sworn declaration that he reported his suspicions that Kendrick was drinking on the job to his superiors in 1994.

applicant may not have been the best person for the job are probative as they 'suggest that [the explanation] may not have been the real reason for choosing [the chosen applicant] over the [plaintiff].'" *Godwin*, 150 F.3d at 1222 (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir.1991)). However, Title VII "was not intended to 'diminish traditional management prerogatives.'" *Burdine*, 101 S.Ct at 1096. The relevant inquiry is not whether a plaintiff in the abstract is more qualified that the chosen candidate, but whether the chosen candidate is more qualified with respect to the criteria actually used by the employer to make its selection. *Coleman v. Quaker Oats*, 232 F.3d 1271, 1285 (9th Cir.2000) (citing *Cotton v. Alameda*, 812 F.2d 1245, 1249 (9th Cir.1987)). The court will not second guess the employer's selection criteria absent a showing of disparate impact on plaintiff's protect class. *Cotton*, 812 F.2d at 1249. Moreover, a plaintiff's "subjective personal judgments of [his] competence alone do not raise a material issue of fact." *Id.* "The closer the qualifications of the candidates, the less weight the court should give to perceived differences in qualifications in deciding whether the proffered explanations were pretextual." *Odima v. Westin Tucson Hotel Co.* 991 F.2d 595, 602 (9th Cir.1993).

Plaintiff fails to present any evidence that Kendrick "may not have been the best person for the job." *Godwin*, 150 F.3d at 1222. As noted, defendants offer evidence that Kendrick was chosen because of his superior interview performance and his supervisory experience. According to Hulst, the interviewing panel recommended Kendrick "primarily because he had more supervisory experience than either of the other two candidates." (Hulst decl. ¶ 5).

Kendrick, during his Navy service, had been an E–9 Master Chief, the top petty officer position in the Navy. Over the course of his military career, Kendrick supervised dozens of employees. (*Id.*). With respect to his interviewing skills, Kendrick "provided more detailed and specific" answers to the panel's questions. (*Id.*). Plaintiff responds by asserting that Kendrick had never held a civil service position higher than GS–7. (Df. Opp., p. 11). However, the GS–8 position did not require experience above the GS–7 level; plaintiff was himself a GS–7 at the time. (Df. ex E1; Df. ex D 151:14–17). Plaintiff also avers that "interviewing skills are bases [sic] on subjective interpretation." (Pl. opp.11). While interviewing entails subjective assessment, the mere assertion of this point fails to raise a triable issue regarding pretext. Defendant's evidence, in any event, indicates that the interviewing skills of the candidates were accorded less weight than their previous supervisory experience. (*See, e.g.,* Markham decl. ¶ 6).

Plaintiff offers no evidence that raises a triable issue concerning his supervisory experience relative to Kendrick's. Rather, plaintiff asserts in his opposition, without any evidentiary support, that the interviewing panel did not ask him about his supervisory experience.[6] He also claims that he was asked "why he was still working for the INS," though other candidates were not asked this question. (Pl. Opp., p. 11). Again, plaintiff cites no evidence to support this assertion. In sum, plaintiff offers no admissible evidence that, according to the criteria employed by defendants, Kendrick was less qualified than plaintiff. Nor does plaintiff produce any evidence that would suggest that the criteria employed by defendants in making their se-

---

**6.** Of course, even if this assertion is true, the interviewing panel could refer to plaintiff's employment record, application, and other documents to assess his supervisory experience.

lection were pretextual. Such circumstantial evidence, in this case, would need to be "specific" and "substantial" to raise a triable issue regarding the credibility of defendant's proffered reason. *Godwin,* 150 F.3d at 1222. Furthermore, in his deposition, plaintiff expressly declined to take issue with the principal criterion defendants assert they employed in selecting Mr. Kendrick:

> Q I'd also like to ask you to assume that Mr. Kendrick's many years of experience as a supervisor, as a Chief Petty Officer was one of the reasons that he was selected over you.
>
> Do you have any reason to believe that he did not have many years of experience as a supervisor in the Navy?
>
> A From his records, no. No, sir.

(Df. ex D p. 43:6–16).

Plaintiff attempts to dispute Kendrick's qualifications, in part, by pointing to Kendrick's history of drinking problems on the job. The Court rejects this argument. Plaintiff fails to explain how Kendrick's past alcohol use in 1994 was relevant to the GS–8 promotion in 1998. Both Hulst and Markham, in their sworn declarations, state that Kendrick's alcohol problems were not considered in 1998 because they believed Kendrick had successfully overcome his addiction. (Markham decl. ¶ 7; Hulst decl. ¶ 6). Plaintiff has no evidence to the contrary, and he cannot create a triable issue by asserting that defendants should have considered Kendrick's alcohol abuse. The Court, in a disparate treatment case, will not second guess the criteria employed by defendant employers. *Cotton,* 812 F.2d at 1249.

■ Plaintiff also cites four comments allegedly made by Gordon Markham which purportedly demonstrate that Markham harbored a general animus toward various minority groups and women. Most relevant to this motion, plaintiff asserts that Markham, when competing with plaintiff for the GS–9 promotion, stated that he hoped plaintiff didn't get the promotion because he was black. Plaintiff does not claim that he was present when Markham allegedly made this remark. Rather, plaintiff claims that Markham made the comment in the presence of Robert Gregor and Warren Hulst, who later told plaintiff what Markham had said. (Df.ex. D, 126:1–14). In his affidavit, Markham denies making such a statement and maintains that he was not aware that Mr. Wilborn was competing with him for the GS–9 promotion. (Markham decl. ¶ 5). Both Gregor and Hulst, in their affidavits, state that they do not recall Markham even making such a statement. (Gregor decl. ¶ 3); (Hulst decl.¶ 4). As Markham later served on the panel that unanimously recommended Hulst and Gregor for the GS–8 promotion, plaintiff argues that this statement constitutes evidence that Markham's later decision to recommend Kendrick over plaintiff was motivated by racial animus. The problem with this argument is that plaintiff can point to no admissible evidence that Markham ever made the remark. The statement upon which plaintiff relies is hearsay. Moreover, it does not fall under any of the hearsay exceptions set forth in the Federal Rules of Evidence. As hearsay, the statement is not admissible for purposes of a Rule 56 motion. *See Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1091 (9th Cir.1990) (holding that, "like affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment").

Apart from this comment, plaintiff asserts that Markham made several other statements, all directed at other individuals, which purportedly demonstrate that Markham harbors prejudice against minorities and women. The first comment relates to a Mexican–American employee

at the Communications Center named Rudolfo Pantoja. According to plaintiff, Markham asked Pantoja whether some Mexican food in the Center's refrigerator belonged to him. Pantoja took offense at this question, as Markham had not asked other employees whether the food belonged to them. According to plaintiff, Pantoja responded, "Because I'm Mexican, you're asking me if this is my food?" (Df.ex. D(1) 123:18–25; 124:1–3). Markham, in his declaration, acknowledges that he made this statement but maintains that he did not intend it to be racially derogatory. Pantoja, Markham recalls, contacted an EEO counselor but went no further. (Markham decl. ¶ 9).

The second comment relates to another Mexican–American employee named Andrea Pitman. At some unspecified time following the Pantoja incident, Markham told Pitman to stop being so "bitchy." Plaintiff alleges that following this comment, Pitman filed an EEOC complaint and filed suit against Markham. However, plaintiff presents no evidence that Pitman filed suit. Further, plaintiff was not present at the time Markham made the comment. In his declaration, Markham recalls that the remark was made during a stressful period while the staff was moving into a new Communications Center. It was loud, and Pitman screamed at everyone to "shut up" so that she could hear the radio. Markham told Pitman, who was pregnant at the time, not to be so "bitchy," whereupon Pitman became upset and left the room. Markham states that he immediately realized the comment was inappropriate and tried to apologize. According to Markham, Pitman contacted an EEO counselor but went no further.

Finally, plaintiff alleges that Markham made a series of insensitive remarks concerning the food a Jewish employee, Jack Kaufman, brought to work. Plaintiff claims that Kaufman felt that he had been racially discriminated against, although he presents no evidence, apart from his own assertions, in support of this claim. As with the Pitman comment, plaintiff does not allege that he was present when Markham purportedly made these remarks to Kaufman. Indeed, plaintiff doesn't address the Kaufman allegations at all in his opposition. For his part, Markham, in his sworn declaration, denies ever making any negative comments about Kaufman's food. (Markham decl. ¶ 8).

Construed in the light most favorable to plaintiff, the comments cited by plaintiff fail to raise a triable issue regarding the credibility of defendant's proffered explanation for Kendrick's selection. Discriminatory comments, or remarks indicating stereotyping, can create the inference of discriminatory motive. *See Warren,* 58 F.3d at 444 (plaintiff, a Hispanic, alleged that he personally heard supervisor make a derogatory comment about Hispanics); *Cordova v. State Farm Ins.,* 124 F.3d 1145, 1150 (9th Cir.1997) (employer referred to Mexican–American employee as a "dumb Mexican"). However, "stray remarks," comments uttered in an ambivalent manner or that have only an attenuated connection to the challenged employment decision, are not sufficient. *See Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990); *Nesbit v. Pepsico,* 994 F.2d 703, 705 (9th Cir.1993). The comments plaintiff attributes to Markham lack any discernible nexus to the challenged employment action in this case. None of the comments was directed at plaintiff or at African–Americans as a group. The only comment with a slightly racial connotation—namely, the question concerning the Mexican dish—was uttered in an ambivalent manner. While plaintiff asserts that Ms. Pitman is Hispanic, the comment Markham directed at her carried no racially derogatory overtones. Furthermore, plaintiff does not explain, nor could the

Court determine from a review of the record, when any of these comments were even made.

Finally, plaintiff cites a 1993 report by Michael J. Creppy, Deputy General Counsel for EEO at INS and Chairman of an INS EEO task force, which addresses the representation of African Americans and other minorities at the INS. The report finds, among other things, that "despite any efforts by individual managers or by the Service generally to achieve a diversified workforce ... INS has been unsuccessful with respect to the recruitment, employment, and advancement of African Americans." (Pl. opp. ex. F11). Plaintiff refers to the Creppy report once in his complaint when he asserts that "there has never been [an African–American] department head or supervisor under GS 1802 compliance and support ... there were 10 [African–Americans] nationally in the GS 1802 series ... [of which] two worked in the San Diego" sector of the U.S. Border Patrol. (TAC ¶ 15). In his opposition, plaintiff asserts that the report contains statistics "attesting to Plaintiff's claim and pointing to the 'good-old boys system' as a bases [sic] for adverse employment decisions." (Pl.Opp., p. 16). Apparently, plaintiff refers to the report's finding that a large percentage of supervisors, managers, and regular employees attribute the underrepresentation of African–Americans at the INS to the "good old boy system" which, among other non-merit factors, favors white males. (Pl.opp., ex. F36). This is the only reference to the report contained in plaintiff's opposition.

Defendant, in its reply to plaintiff's opposition, cites this Court's January 9, 2002 order denying plaintiff's motion for summary judgment and judgment on the pleadings. In that order, this Court concluded that the Creppy report, along with the other evidence adduced by plaintiff, failed to establish a prima facie case of disparate treatment. (1/09/2002 Order, p. 8). The Court explained:

> The Creppy Report was issued in June 1993—over four years before Plaintiff applied for the positions he contends he should have received. Plaintiff has not presented any evidence indicating the findings of the 1993 report are probative of the conditions in the INS at the time he was being considered for the positions either generally or with respect to this particular applications for the positions, or that the recommendations contained in the Creppy report have not or are not being implemented.

*Id.* For purposes of this motion, as noted above, the Court assumes without deciding that plaintiff has established a prima facie case of disparate treatment with respect to the GS–8 promotion. Plaintiff relies on the Creppy report in this instance to raise a triable issue with regard to whether defendant's proffered reason for his non-selection is pretextual, not to establish a prima facie case. As the Ninth Circuit has explained, statistical evidence may be used both to establish a prima facie case and to meet the plaintiff's burden to show that the defendant's articulated reason for the employment action in question is pretextual. *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1363 (9th Cir.1985). However, the usefulness of statistics in showing pretext " 'depend[s] primarily upon their relevance to the specific decision affecting plaintiff, [and not] those that affect plaintiff's protected class in general.' " *Penk v. Oregon State Bd. of Higher Education,* 816 F.2d 458 (9th Cir.1987) (quoting B. Schlei & P. Grossman, Employment Discrimination Law 1316 (2d.1983)). Although the context of the January 9, 2002 order differs from the present motion, its reasoning remains applicable. Plaintiff again fails to present any evidence indicating that the conditions documented by the Creppy report pre-

vailed at the time of the promotions in this case. And once again plaintiff fails to present any evidence suggesting that the INS failed to implement the recommendations set forth by the Creppy report.

The Court recognizes that, in the context of a motion for summary judgment, plaintiff's evidence should not be viewed in isolation. Rather, the question for this Court is whether the admissible evidence produced by plaintiff would allow a reasonable jury to conclude that defendant's proffered reason for his non-selection is pretextual. *See, e.g., Bray v. Marriott Hotels,* 110 F.3d 986, 991 (3rd Cir.1997) (noting "that it is the totality of the evidence that must guide [the court's] analysis rather than the strength of each individual argument"). The Court will therefore summarize the evidence presented by plaintiff to show pretext.

First, plaintiff asserts, without offering any supporting evidence, that Kendrick was less qualified for the GS–8 promotion than plaintiff. Not only does plaintiff fail to present any evidence to support this claim, he contradicts portions of his sworn deposition. Plaintiff's conclusory assertions regarding his own qualifications compared to those of Kendrick simply fail to create a triable issue. Second, plaintiff asserts that Markham made four comments which purportedly demonstrate that he harbored discriminatory animus toward minorities and women. Of these, only one of the comments was directed at plaintiff, or at African Americans as a group. As noted, plaintiff's evidence of this comment is inadmissible hearsay. The other three comments lack any discernible connection to the employment action at issue in this case. Finally, plaintiff cites a 1993 report which documents the underrepresentation of African–Americans at the INS, without offering any evidence showing that the report's findings are probative of the conditions at the INS more than four years later when the employment decisions at issue in this case were made. For the foregoing reasons, the Court concludes that plaintiff fails to present the "specific and substantial" evidence required to raise a triable issue concerning pretext. *Godwin,* 150 F.3d at 1222. The Court therefore concludes that defendant is entitled to summary judgment on this claim.

### 3. Shift Coordinator

Plaintiff's complaint alleges that he was "not asked to perform the function of Shift Coordinator and alleges that this employment practice has not made him free from discrimination based on his race." (TAC, ¶ 19). Shift coordinators supervise shifts at the Communications Center when the shift supervisor is unavailable for any reason. The position is unofficial and uncompensated. Shift supervisors select the shift coordinator on the basis of "experience, seniority, and the willingness of employees to fill the position." (Markham decl., ¶ 3). Because plaintiff presents no direct evidence that discriminatory animus motivated his non-selection for shift coordinator, the Court will analyze his claim according to the *McDonnell Douglas* framework.

Defendant offers a straightforward, non-discriminatory justification for plaintiff's non-selection to shift coordinator: plaintiff requested that he not be selected as a shift coordinator and refused several offers to serve in that capacity. (Hulst decl. ¶ 7). In particular, plaintiff actually did serve as a shift coordinator or "shift leader" some time before 1997. Frustrated that employees would not follow his orders while he served as a shift leader, plaintiff requested that he be taken off the list, or out of consideration for the position. According to plaintiff, he was the only shift leader who wasn't permitted to tell other employees what to do. (Pl. opp., p. 3–4; Df. ex. D, 168:5–25). Be-

cause he was the first African–American shift leader, plaintiff alleges that this constitutes disparate treatment on the basis of his race. After being taken off the list, plaintiff never asked to be put back on. (Df.ex. D, 169:21–2). Hulst, in his declaration, states that he asked plaintiff several times to serve as shift coordinator. Each time, plaintiff turned down the offer. (Hulst decl., ¶ 7).

In response, plaintiff disputes that Hulst ever served as his supervisor or that Hulst ever discussed the shift supervisor position with him. (Pl. opp., p. 4). However, plaintiff produces no evidence, admissible or otherwise, in support of this assertion. Moreover, plaintiff fails to show any evidence that defendant's proffered reason for his non-selection is pretextual. Indeed, plaintiff admits in both his declaration and deposition that he asked to be taken out of consideration for shift leader. While plaintiff asserts that the name of the position changed from "shift leader" to "shift coordinator" in 1997, he fails to explain how this is relevant. (Pl. Opp., p. 3). Further, the fact that plaintiff requested not to be assigned the position anymore because of his belief, which he never communicated to his superiors, that he was given less authority than other, Caucasian shift leaders in dealing with employees is not sufficient to raise a triable issue regarding pretext. Accordingly, defendant is entitled to summary judgment on this claim.

Plaintiff also asserts that the position of shift leader "was used an unlawful employment practice that caused disparate impact on the basis of the Plaintiff's race" and that the position "was used as one of the prerequisite determiner [sic] for applying for the supervisory position." (Pl Opp., p. 3). To the extent plaintiff argues that the position of shift leader causes a disparate impact, his claim must fail. Plaintiff produces no evidence, and there

is no evidence in the record, that the shift coordinator or shift leader position was a prerequisite for either the GS–9 or GS–8 promotions. (*See* DF ex., C (requirements for GS–9 position); ex E (requirements for GS–8 position)). Nor does plaintiff present any evidence that any employment practice utilized by defendant causes a disparate impact on any protected group.

### 4. Hostile Work Environment

Title VII provides a remedy to a plaintiff for a hostile work environment where he "proves (1) that he was subjected to verbal or physical conduct of a harassing nature; (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently pervasive to alter the conditions of employment and create an abusive working environment." *Pavon v. Swift Transp. Co.*, 192 F.3d 902, 908 (9th Cir.1999) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail on a hostile work environment claim under Title VII, a "plaintiff 'must prove more than a few isolated incidents of enmity' and 'casual comments, or accidental or sporadic conversation' will not entitle the plaintiff to relief." *Hogan v. Henderson*, 102 F.Supp.2d 1180, 1189 (D.Ariz.2000) (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986)).

■ Construing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff fails to show that there exists a genuine dispute of material fact regarding his hostile work environment claim. Plaintiff does not specify with

any particularity the basis of his hostile work environment claim. In his opposition, plaintiff only cites Markham's comment to Pitman, which was discussed above. Presumably, plaintiff alleges that all of the four comments allegedly made by Markham, combined with the two promotion denials and alleged deficiencies in the processing of his discrimination complaint, amounted to a hostile working environment. (Df.Mem., p. 3). None of the comments allegedly made by Markham were directed at plaintiff. Plaintiff was present, at most, for only one of the comments—that relating to Pitman. Only Markham's alleged remark that he hoped plaintiff didn't get the GS–9 promotion because of his race makes any reference to African–Americans a group. As noted, plaintiff produces no admissible evidence that this comment was ever uttered. Even assuming that plaintiff did possess such evidence, this remark is not actionable. *Hogan*, 102 F.Supp.2d at 1189. The two promotion denials, and defendant's alleged failure to properly process plaintiff's discrimination complaints, simply do not constitute "verbal or physical conduct of a harassing nature." *Pavon*, 192 F.3d at 908. To survive defendant's motion for summary judgment, plaintiff must show that there is a genuine factual dispute as to whether a reasonable person would find that the conduct complained of is "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir.1994). Because the Court concludes that plaintiff fails to make such a showing, defendant is entitled to summary judgment on this claim.

## C. Rehabilitation Act Claim

▮ Plaintiff asserts that defendant denied him the GS–9 promotion, in part, because of his disability, and failed to reasonably accommodate his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791. The Ninth Circuit has held that Section 501 (29 U.S.C. § 791) is the exclusive remedy for federal employees alleging discrimination on the basis of disability. *Johnston v. Horne*, 875 F.2d 1415, 1418 (9th Cir.1989). Section 501 provides for two types of claims: (1) non-affirmative action employment discrimination claims based upon 29 U.S.C. § 791(g), and (2) claims based upon the government's failure to reasonably accommodate an employee, as required under 29 U.S.C. § 791(b). Non-affirmative action employment discrimination claims are governed by the standards applicable to claims under the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 791(g); *Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996). Reasonable accommodation claims are governed by the explicit terms of § 501(b), 29 U.S.C. § 701(b), and its enacting regulations. *See Mantolete v. Bolger*, 767 F.2d 1416, 1422–3 (1985).

### 1. Non–Affirmative Action Employment Discrimination

Plaintiff alleges that he was denied the GS–9 promotion, in part, because of his disability.[7] (Pl.TAC, § 74). Because defendant disclaims any reliance on plaintiff's alleged disability in making the employ-

---

7. Plaintiff, in his deposition, testified that he did not believe that Kendrick's selection for the GS–8 position was motivated by plaintiff's disabled status:

> Q BY MR. STUTLER: Are you claiming that the selection of Mr. Kendrick [for the GS–8 position] over you was motivated or

had anything to do with your disabled status?

> A No, I'm not.

(Df. ex D, p. 49:15–18). Apparently, Kendrick also suffered from a service connected disability. (*Id.* at 49:4–10).

ment action, the familiar McDonnell Douglas burden shifting framework applies to plaintiff's claim. *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1174 (9th Cir. 1998); *Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir.2001). To establish a prima facie case of disability discrimination, a plaintiff must show (1) he is disabled within the meaning of the statute; (2) he is otherwise qualified for the position; (3) he was adversely treated because of his disability; and (4) he worked for the federal government. *See Reynolds v. Brock*, 815 F.2d 571, 573–4 (9th Cir.1987). If the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. The burden then shifts back to the plaintiff to produce evidence sufficient to allow a reasonable factfinder to conclude that plaintiff's articulated reason is pretextual. The Court concludes that plaintiff fails to establish a prima facie case under the Rehabilitation Act because (1) plaintiff cannot show that he is "disabled" within the meaning of the Rehabilitation Act; (2) plaintiff cannot show that he was "otherwise qualified" for the GS–9 position; and (3) plaintiff presents no evidence that he was treated adversely because of his purported disability. Accordingly, defendant is entitled to summary judgment on this claim.

A person is "disabled" for purposes of the Rehabilitation Act where he suffers from "a physical or mental impairment which substantially limits one or more ... major life activities." 29 C.F.R. § 1614.203(1)(a)(I). Major life activities include functions "such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at § 1614.203(3). Alternatively, a person is disabled if he has a record or such an impairment or is regarded as having such an impairment. *Id.* at § 1614.203(1)(ii)—

(iii). Plaintiff bears the burden of establishing that he is disabled within the meaning of the Rehabilitation Act. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir.2001).

Plaintiff suffers from a spinal disc condition—specifically, a herniated disc—for which he receives disability compensation. The Department of Veterans affairs classifies plaintiff's condition as a 10% service-connected disability. (Df. Mem, ex F). According to plaintiff, he developed the condition during his service in the Navy. (Df. ex D 128:22). Plaintiff was honorably discharged from the Navy in 1985 and began working for the Department of Justice around 1986. (*Id.* at 132:7). From 1983 to 1989, plaintiff's back would "go out" approximately twice a year. These episodes generally lasted from a few days to a week. (*Id* at 139:7–13). Since about 1990, plaintiff's back has gone out with less frequency, averaging less than once a year, but he still experiences a "constant pain" in his back. (*Id.* at 133:6–10; 138:25–139:1–2).

In his deposition, plaintiff stated that for the entire period of his employment with the DOJ, except for those instances in which his back has gone out, he has been able to: sit for long periods of time; stand for long periods of time; walk on flat surfaces and inclines; climb stairs; pull and "do push and pull motions"; bend; crouch; and lift objects weighing 25 pounds. (*Id.* at 132:3–133:3; 134:18–135:11). Moreover, plaintiff testified that his back problems did not limit his ability to take care of himself, perform manual tasks, walk, see, hear, speak, or work (again, this does not include those instances when his back goes out). (*Id.* at 138:2–20). When applying for the GS–9 position, plaintiff marked on the applicant survey that he did not have a disability. The survey instructed applicants that "[a] per-

son is disabled if he or she has a physical or mental impairment which substantially limits one of more major life activities." (Df. ex G2). Plaintiff responds by asserting that he indicated that he was not disabled by mistake, as none of the listed disabilities included his ailment. In retrospect, plaintiff asserts that he should have marked the second box for "handicap not listed." The uncontroverted evidence indicates that plaintiff's back ailment limits his ability to engage in major life activities only during those periods when his back "goes out." However, according to plaintiff's deposition testimony, he has had "very few" recurrences of such episodes since 1990. While not trivial, plaintiff's symptoms are too intermittent and episodic to constitute a disability for purposes of the Rehabilitation Act.[8]

■ Plaintiff also fails to produce sufficient evidence to allow a reasonable factfinder to conclude that he has a record of a physical impairment that substantially limits one or more major life activities. In support of his contention that he has a record of a disability within the meaning of the Rehabilitation Act, plaintiff attaches to his opposition a number of documents relating to his back injury. These include two letters from the Department of Veterans Affairs confirming that plaintiff receives disability compensation for his back injury, as well as several medical records which apparently reflect several evaluations of plaintiff's back condition while he

served in the Navy. Defendant objects to the consideration of these documents on the grounds that plaintiff fails to authenticate any of them. *See Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987) (holding that for a court to consider a document on summary judgment, the document "must be authenticated by and attached to an affidavit that meets the requirements of 56(e) and the affiant must a be a person through whom the exhibits could be admitted into evidence"). While plaintiff is a pro se litigant, this does not excuse him from the procedural requirements set forth in the federal rules. *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987). Thus, plaintiff fails to present any admissible evidence that supports his assertion that he has a record of a physical impairment that substantially limits a major life activity.

Even the Court found plaintiff's documents admissible, they fail to show that plaintiff has a record of a disability for purposes of the Rehabilitation Act. *See Howell v. Sam's Club # 8160/Wal–Mart,* 959 F.Supp. 260, 268 (E.D.Pa.1997) (noting that plaintiff could not establish a record of disability under the ADA simply by introducing evidence that the Veteran's Administration determined that plaintiff suffered from a twenty percent disability stemming from a spinal disc impairment).

---

8. The Court recognizes that "an intermittent impairment that is a characteristic manifestation of an admitted disability is ... a part of the underlying disability and hence a condition that the employer must reasonably accommodate." *Vande Zande v. State of Wis. Dept. of Admin.,* 44 F.3d 538, 544 (7th Cir. 1995). Here, however, plaintiff's underlying condition—a herniated disc—is not an "admitted disability." Plaintiff in *Vande Zande,* a paraplegic, suffered intermittent pressure ulcers, which the court concluded were "part of her disability" that needed to be reasonably accommodated. *Id.* "An intermittent manifestation of a disease must be judged the same way as all other potential disabilities," that is, on a case-by-case basis. *E.E.O.C. v. Sara Lee Corp.,* 237 F.3d 349, 352 (4th Cir. 2001); *see also Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 871 (2d Cir.1998) (concluding that although plaintiff's condition was a permanent affliction, "the fact that it is asymptomatic for long periods, and varies intensity, weighs against a finding of substantial limitation").

The EEOC implementing regulations for the ADA squarely address this point:

> The fact that an individual has a record of being a disabled veteran, or of a disability retirement, or is classified as disabled for other purposes, does not guarantee that the individual will satisfy the definition of 'disability' under part 1630 ...[In] order for an individual who has been classified in a record as 'disabled' for some other purposes to be considered disabled for purposes of part 1630, the impairment indicated in the record must be a physical or mental disability that substantially limits one or more of the individual's major life activities.

29 C.F.R. Pt. 1630, App. § 1630.2(k).[9] The medical records attached by plaintiff suggest that plaintiff suffered some temporary incapacitation as result of a herniated disc. Such a temporary incapacitation does not constitute a physical impairment substantially limiting major life activities. Further, plaintiff produces no evidence suggesting that he was regarded as having a disability that substantially limited any major life activities. Plaintiff's current and former supervisors state in sworn declarations that they had no knowledge, prior to this lawsuit, that plaintiff suffered from or claimed any disabilities. (*See* Markham decl. ¶ 2; Hulst decl. ¶ ; Gregor decl. ¶ 2).

Plaintiff also fails to establish a triable issue with respect to the second element of his disparate treatment claim, namely, that he was an "otherwise qualified individual." For purposes of the Rehabilitation Act, a qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the position in question ... and who ... meets the experience or education requirements ... of the position in question." 29 C.F.R. § 1614.203(a)(6)(I). As explained above in the context of plaintiff's Title VII claim, plaintiff did not possess the requisite experience for the GS–9 position when he applied for it in 1997. Finally, plaintiff fails to produce any evidence, admissible or otherwise, which suggest that he was denied the promotions because of his purported disability.

## 2. Reasonable Accommodation

■ Plaintiff asserts that the two promotions at issue in this case constituted "reasonable accommodations" of his alleged disability. (Pl. TAC, P 63); (Pl.Opp. p. 9–10) ("Plaintiff asserts consideration for his disability was requested and he was discriminated against because of his disability by not being promoted as a benefit of his disability"). According to plaintiff, as a disabled veteran, he was entitled to a disability preference under the Veterans Preference Act, 5 U.S.C. § 2108, and the Veterans Readjustment Act, 38 U.S.C. § 4214. Promotions, plaintiff asserts, may qualify as reasonable accommodations under the Rehabilitation Act.[10] Because defendant denied plaintiff both promotions, and because plaintiff was eligible for a disability preference, plaintiff reasons that defendant failed to reasonably accommodate his disability. Plaintiff's reasoning, however, is flawed. The Rehabilitation Act imposes upon federal agencies an affirmative duty to " 'structure their procedures and programs so as to ensure that handicapped individuals are afforded equal

---

9. While this provision addresses the ADA, the regulations "implementing the ADA provide guidance" on how to interpret the terms of the Rehabilitation Act. *Hamm v. Runyon*, 51 F.3d 721, 725 (7th Cir.1995).

10. Plaintiff cites two cases in support of this proposition, neither of which addresses promotion as a means of reasonable accommodation. *See Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir.1985); *Buckingham v. United States*, 998 F.2d 735 (9th Cir.1993).

opportunity in both job assignment and promotion.' " *Buckingham v. U.S.*, 998 F.2d 735, 739 (9th Cir.1993) (quoting *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 306 (5th Cir.1981)). This duty "goes beyond mere non-discrimination," requiring federal agencies to "make reasonable accommodation to the known physical or mental limitations of a qualified applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Id.* (citing 29 C.F.R. § 1613.704(a)). However, "employers are obligated to make reasonable accommodation only to the physical or mental limitations resulting from the disability of a qualified individual with a disability that is known to the employer." *Maes v. Henderson*, 33 F.Supp.2d 1281, 1291 (D.Nev.1999).

Plaintiff presents no evidence, admissible or otherwise, that he ever requested either of the promotions as a reasonable accommodation of his alleged disability.[11] Rather, plaintiff erroneously conflates his request for a "disability preference" when applying for the promotions with a request for reasonable accommodation. Moreover, plaintiff fails to explain how these promotions would accommodate his purported disability within the meaning of the Rehabilitation Act. He does not assert that he was incapable of performing his duties when he applied for the two promotions. Apparently, plaintiff believes that he was entitled to the promotions by virtue of his status as a disabled veteran. It therefore appears that plaintiff's actual complaint is not that defendant failed to accommodate his disability, but that defendant failed to give him proper credit for his status as a

disabled veteran when evaluating him for the two promotions. If this is indeed plaintiff's argument, the Court rejects it. First, plaintiff has produced no authority, and the Court is unable to find any, indicating that the Court has jurisdiction to hear such a claim. Second, as discussed above in the context of plaintiff's race discrimination claim, plaintiff was not qualified for the GS–9 position. Third, with respect to the GS–8 promotion, plaintiff produces no admissible evidence that defendant was required to promote plaintiff over Kendrick because of plaintiff's veterans status. Instead, plaintiff asserts that he submitted an application for a "10 Point Veterans Preference," along with a "Veterans Administration Disability Compensation Rating Letter," which "represented him as eligible for disability preference." (Pl.Opp., p. 9). Fourth, veterans preferences do not apply to promotions. *See* 5 C.F.R. § 211.102(c) ("Preference eligible does not apply ... to inservice placement actions such as promotions."); *Brown v. Dep't of Veterans Affairs*, 247 F.3d 1222, 1225 (Fed.Cir.2001) ("Neither the VPA nor VEVRAA accord veterans' preference for promotions and intra-agency transfers."); *Hunt v. United States Gov't*, 154 F.Supp.2d 1047, 1053 (E.D.Mich.2001) (discussing cases and concluding that the Veterans Employment Opportunity Act does not expand veteran's preference rights beyond initial appointment).

**D. Retaliation Claim**

Plaintiff alleges that defendant retaliated against him for appealing his nonselection to the Merit System Protection Board ("MSPB"). Specifically, plaintiff al-

---

**11.** The general rule is that an agency is obligated to engage in an interactive process seeking a reasonable accommodation of an employee's disability only where the employee has specifically requested such an accommodation. An exception to this general rule

applies only where the employer "knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir.2000).

leges that defendant failed to notify him of his right to contact an EEO counselor, his right to file an EEO complaint, his right to file a discrimination complaint in federal court, and that defendant failed to investigate his complaint. (Pl. Opp., p. 4–5; TAC, P 95–100). Title VII prohibits an employer from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The provision of s.2000e–3 apply to the federal government and its agencies pursuant to § 717 of Title VII. *See Ayon v. Sampson,* 547 F.2d 446, 450 (9th Cir.1976).

The *McDonnell–Douglas* order and allocation of proof that governs disparate treatment claims also governs retaliation claims. *Bateman v. United States Postal Serv.,* 151 F.Supp.2d 1131, 1141 (N.D.Cal. 2001). To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir.2000). The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for its adverse employment decision. *Id.* Once the employer carries this burden, the plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir.2000). Defendant argues that plaintiff fails to establish a prima facie case of retaliation because he has failed to produce any evidence that he was subjected to an adverse employment action. In addition, defendant argues that plaintiff offers no evidence, apart from conclusory allegations, of any causal connection between the adverse decision and plaintiff's participation in protected activities.

Because plaintiff alleges that defendant retaliated against him for his MSPB appeal, the Court will briefly review the relevant undisputed facts surrounding that appeal. Plaintiff filed an appeal of his non-promotions with the MSPB on November 20, 1998. (TAC, P18). On October 21, 1998, the Administrative Judge concluded that the Board lacked jurisdiction over any of plaintiff's claims and dismissed the appeal. The full board denied plaintiff's petition for review on June 16, 1999. (TAC, P19). Plaintiff then appealed to the United States Court of Appeals for the Federal Circuit, the Equal Employment Opportunity Commission ("EEOC"), and the district court. The EEOC denied plaintiff's petition for review of the Board's final decision because plaintiff had already appealed the decision to the Federal Circuit. On February 16, 2000, the Federal Circuit affirmed the Board's decision that it lacked jurisdiction.

After the MSPB dismissed his complaint, plaintiff alleges that defendant retaliated by not notifying him of his "right to contact EEO counselors and to file a[sic] EEO complaint subject to 29 C.F.R. § 1614.107." (TAC, P 96). In addition, plaintiff asserts that defendant failed to conduct a "complete and fair investigation" of · his complaint as required by law. (TAC, 98). Plaintiff repeats these claims in his opposition, while adding the assertion that defendant did not provide him notice of his right to file suit in federal court. Following dismissal of plaintiff's MSPB appeal, defendants indeed were required to provide plaintiff with notice:

> If a person files a mixed case appeal with the MSPB instead of a mixed case complaint and the MSPB dismisses the appeal for jurisdictional reasons, the

agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file and EEO complaint, subject to § 1614.107.

29 C.F.R. § 1614.302. There is nothing in plaintiff's complaint, opposition, or the record that indicates that plaintiff was entitled to any other form of notice. The Court notes that attached to plaintiff's opposition is a letter from the INS, dated November 14, 2000, which appears to provide exactly the form of notice contemplated by the provision quoted above. (Pl. opp., ex. A). While this letter is not authenticated, it certainly does not suggest that plaintiff will be able to produce evidence at trial in support of his claim that defendant's failed to provided him notice.

Indeed, plaintiff's opposition is entirely devoid of any reference to evidence, admissible or otherwise, in support of his claim that he was subjected to retaliation. Rather, plaintiff's opposition consists of a series of conclusory allegations that defendant retaliated against him, citing various provisions of the Code of Federal Regulations but no evidence. Such conclusory assertions are insufficient to withstand defendant's motion for summary judgment. As the Court concluded in its January 2, 2002 order denying plaintiff's motion for summary judgment:

Plaintiff has not presented any authority indicating that the allegedly retaliatory actions constitute 'adverse employment actions.' Further, he has not presented any evidence to support his claims other than his assertions that he was retaliated against. As discussed above, conclusory allegations are insufficient to prevail on summary judgment.

(1/02/2002 Order, p. 10). Once again, plaintiff fails to produce any evidence in support of his assertion that defendant retaliated against him. Plaintiff's statement in his deposition that he believes defendant retaliated against him, without any basis in personal knowledge or reference to any evidence, is insufficient to withstand summary judgment. *Carmen,* 237 F.3d at 1028 ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."). Further, plaintiff again fails to produce any authority in support of his apparent contention that defendant's alleged failure to provide him timely notice of his right to contact an EEO counselor constituted an "adverse employment action." Given the fact that plaintiff chose to pursue his claims in federal court immediately following the Federal Circuit's decision, his assertion that defendant's failure to process his EEO complaints properly amounts to "adverse employment action" is meritless. For the foregoing reasons, the Court concludes that plaintiff fails to establish a prima facie case of retaliation, and defendant is therefore entitled to summary judgment on this claim.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. Judgment shall be entered in favor of defendant.

**IT IS SO ORDERED.**